JUDKINS & McCORMICK CO. *v.* UNITED STATES (No. 1351).[1]

1. AIGRETTE.

The term "aigrette" embraces not only the feather of the heron or egret, but also tufts of precious stones worn on the headdress of men and women.

2. GLASS AIGRETTES.

The glass aigrettes of the importation are not to be deemed artificial flowers, either because of their name or of the effect they are intended to produce. They are in chief value of glass and fall within the provisions of paragraph 109, tariff act of 1909, as manufactures in chief value of glass.

3. FUR MOTIFS.

The fur motifs are not made in imitation of feathers, but are intended to be used as ornaments for ladies' hats and were classifiable as furs prepared for use as material under paragraph 439 of that act.

United States Court of Customs Appeals, May 3, 1915.

APPEAL from Board of United States General Appraisers, Abstract 34520 (T. D. 34090) and Abstract 35113 (T. D. 34307).

[Affirmed as to part, reversed as to part.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Artificial aigrettes, used for millinery ornaments, some of which were made of horsehair, some of spun glass, and some of rabbit skin, were classified by the collector of customs at the port of New York as artificial feathers and assessed for duty at 60 per cent ad valorem under the provisions of paragraph 438 of the tariff act of 1909, which said paragraph is as follows:

438. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, twenty per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, sixty per centum ad valorem; boas, boutonnières, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials or articles herein mentioned, sixty per centum ad valorem.

The importers protested that the merchandise was not artificial feathers, and claimed, first, that the horsehair ornaments were either manufactures of wire, dutiable at 35 per cent ad valorem, plus 1 cent per pound, and not less than 40 per cent ad valorem, under paragraph 135, or braids, plaits, laces, or willow sheets or squares, com-

---

[1] Reported in T. D. 35385 (28 Treas. Dec., 742).

posed wholly or in chief value of real horsehair, dutiable at 15 or 20 per cent ad valorem under paragraph 422, or manufactures of fur, dutiable at either 35 per cent or 50 per cent ad valorem under paragraph 439; second, that the rabbit skin ornaments or fur motifs were manufactures of fur, dutiable at 35 per cent or 50 per cent ad valorem under paragraph 439; and, third, that the glass ornaments were manufactures of glass, dutiable at 45 per cent ad valorem under paragraph 109. The paragraphs relied upon by the importers to sustain their appeal were, in so far as pertinent, as follows:

135. Round iron or steel wire, not smaller than number thirteen wire gauge, one cent per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-fourth cents per pound; smaller than number sixteen wire gauge, one and three-fourths cents per pound: *Provided*, That all the foregoing shall pay duty at not less than thirty-five per centum ad valorem; all wire composed of iron, steel, or other metal except gold or silver, covered with cotton, silk, or other material, corset clasps, corset steels, dress steels, and all flat wires, and steel in strips, not thicker than number fifteen wire gauge and not exceeding five inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, and all other wire not specially provided for in this section, shall pay a duty of not less than thirty-five per centum ad valorem; * * * : *Provided further*, That articles manufactured wholly or in chief value of any wire or wires provided for in this paragraph shall pay the maximum rate of duty imposed in this section upon any wire used in the manufacture of such articles and in addition thereto one cent per pound: *And provided further*, That no article made from or composed of wire shall pay a less rate of duty than forty per centum ad valorem; * * *.

439. * * * Manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses, thirty-five per centum ad valorem; articles of wearing apparel of every description, partly or wholly manufactured, composed of or of which fur is the component material of chief value, fifty per centum ad valorem. * * *

109. Stained or painted glass windows, or parts thereof, * * * and all glass or manufactures of glass or paste or of which glass or paste is the component material of chief value, not specially provided for in this section, forty-five per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

The appellants in their brief and on oral argument of the appeal specifically waived the claims of their protest as to the horsehair aigrettes, and in consequence the only subject submitted to the court for determination is the classification of the so-called fur motifs and glass aigrettes. The fur motifs are about 13 inches long and taper from a width of 4 inches near the top to 2 inches at the stem. The motifs are manufactured by sewing the white belly of the rabbit on a wire frame in such a way as to produce an upright, rounded, fluffy effect resembling that produced by the pompon. The wires constituting the frame are permitted to extend slightly beyond one end of the fur covering and the wires thus exposed are twisted together to form

a stem. The wire stem is concealed from view by a cap made of celluloid in imitation of the horny basal part of a quill or feather. It appears from the testimony that the value of the fur used in making the motifs is about 35 cents and that of the wire about 1½ cents. No value was fixed for the celluloid cap, but it is apparent from an inspection of the cap that its value is insignificant as compared with that of the fur. According to the testimony the motifs are used as ornaments for ladies' hats and are in chief value of fur.

The glass aigrettes are made of fine threads of spun glass, firmly bound together at one end by some kind of cement, gum, or glue. No evidence was introduced as to the relative values of the spun glass and the material used to fasten the ends together, but we think it evident from an examination of the goods that glass is clearly the component element of chief value. The aigrettes are some 5½ inches in length and are designed to be worn in the hair or to produce a wavy "stick-up" effect on ladies' hats.

The Government argues and the board decided that the millinery ornaments just described must be regarded as artificial representations of genuine feather aigrettes, designed to take the place of real feathers as a trimming for women's hats, and that therefore the goods were properly assessed as artificial feathers.

We find ourselves unable to admit the correctness of either of the premises upon which the conclusion is based, inasmuch as both are at variance with the evidence afforded by the samples of the goods and the testimony contained in the record.

The glass aigrettes bear no resemblance whatever to feathers, as that term is commonly understood, and in our opinion there is nothing in their appearance or make-up to lead anyone to believe that they were intended to simulate feathers. Though called aigrettes, the testimony is positive and direct that they resemble in no way the feather aigrette, with the exception that they are designed to produce a "stick-up" effect. As the term "aigrette" embraces not only the feather of the heron or egret but also tufts of precious stones worn on the headdress of men and women, and inasmuch as wired ribbons and velvets are commonly used to produce a "stick-up" effect on the headdress of women, it can hardly be said that the glass ornaments in controversy must be classified as artificial feathers, either because of their name or the effect they are intended to produce.

The glass aigrettes, as already stated, are made in chief value of glass, and can not be considered as artificial flowers. They should, therefore, be assessed for duty at 45 per cent ad valorem as manufactures in chief value of glass under the provisions of paragraph 109, as claimed by the importers.

The fur motifs are not made in imitation of feathers, and, beyond the fact that the wire stem is covered by a cap having the appearance of the horny basal part of a quill, there is nothing about them which would justify us in concluding that they were made to represent or simulate feathers. Indeed, any such idea is negatived by the testimony of the witness Joseph S. Leavy, who testified that the motifs were made to represent the tail of the white fox. The motifs are, according to the record, intended to be used as ornaments for ladies' hats, and as the fur of which they are predominantly composed has been cut to form and sewed over wire to serve that use, we think the motifs should be classified as furs prepared for use as material, dutiable at 35 per cent ad valorem under the provisions of paragraph 439, as claimed in the protest.

As the fur motifs and the glass aigrettes are provided for and enumerated in the tariff act of 1909, they can not be made dutiable by similitude to artificial feathers, even if their use as ornaments for ladies' hats could be regarded as a use similar to that of artificial feathers.

\* \* \* All other paragraphs, except the one providing for nonenumerated unmanufactured or manufactured articles, must be inapplicable before an importation may be assessed for duty under the similitude provision. United States *v.* Stouffer (3 Ct. Cust. Appls., 67, 69; T. D. 32351).

As to the horsehair aigrettes the decision of the Board of General Appraisers is *affirmed*, and as to the fur motifs and glass aigrettes it is *reversed*.